**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **SHIRLEY JORDAN,**<br><br>***Plaintiff,***<br><br>**v.**<br><br>**MICHELLE MARIK and HIRSCHBACH MOTOR LINES, INC.,**<br><br>***Defendants.*** | **CIVIL ACTION NO.**<br>**5:25-cv-00033-TES** |

**ORDER DENYING PLAINTIFF'S *DAUBERT* AND RULE 37 MOTION TO EXCLUDE PATRICK HANSON'S EXPERT TESTIMONY**

This case arises from a February 17, 2023, collision between motor vehicles operated by Plaintiff Shirley Jordan and Defendant Michelle Marik, a truck driver then employed by Defendant Hirschbach Motor Lines, Inc. ("Hirschbach"). Defendants retained Dr. Patrick Hanson to provide his expert opinion concerning Plaintiff's claimed knee injuries and medical treatment—specifically whether the injuries were caused by the collision at issue and whether the medical treatment was necessary and reasonable. [Doc. 31-1]. Plaintiff now moves to exclude his expert testimony and opinion pursuant to *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). [Doc. 24]. Plaintiff further moves to exclude his testimony under Federal Rule of Civil Procedure 37(c)(1). [*Id.*].

## BACKGROUND

Plaintiff alleges that, on February 17, 2023, her vehicle was struck by a tractor-trailer truck operated by Michelle Marik. [Complaint, Doc. 1-1 at ¶ 39]. Marik was driving the truck as an employee of Hirschbach. [*Id.* at ¶ 10]. This collision allegedly caused Plaintiff to suffer from myriad injuries to her person. [*Id.* at ¶¶ 41, 60–62]. She filed suit to recover general and special damages related to Defendants' alleged negligence, which she claims caused the collision. [*Id.* at ¶¶ 44, 47, 55–58, 62]. Plaintiff contends that, because of the collision, she sustained injuries to her body "including, but not limited to," her neck, left shoulder, left hip, back, cervical spine, and lumbar spine. [*Id.* at ¶ 60]. She further alleges that she suffers from headaches because of the crash. [*Id.*]. She alleges she underwent a variety of medical treatments for these alleged injuries. [*Id.* at ¶ 61].

On the other hand, Defendants argue that Plaintiff's injuries were not caused by their negligence. [Marik's Answer, Doc. 1-1 at ¶ 60]; [Hirschbach's Answer, Doc. 1-1 at ¶ 60]. Defendants retained Dr. Patrick Hanson to provide his expert opinion concerning Plaintiff's alleged knee injuries, the causation of those injuries, and the reasonableness and necessity of her medical treatment for those injuries. [Doc. 31-1].

Accordingly, Defendants provided expert reports and initial disclosures under Rule 26 to Plaintiff on October 3, 2025. [Doc. 24-3]; [Doc. 24-4]. The Rule 26 report mentions including a complete statement of Dr. Hanson's opinion. [*Id.*]. However,

Defense counsel inadvertently failed to produce Dr. Hanson's three-page opinion report at the time of the disclosure, despite providing an expert file containing "over 3,207 pages of documents." [Doc. 24-1, p. 2]; *see also* [Doc. 24-6]. Plaintiff's counsel inquired about the missing material for the Dr. Hanson opinion almost a year later, on August 24, 2026. [*Id.*]. That same day, Defense counsel acknowledged the error and produced Dr. Hanson's three-page opinion report, stating "I am not sure why the full reports were not attached to Rule 26 filings." [*Id.*].

Dr. Hanson is a board-certified orthopedic surgeon. [Doc. 31-2]. And, he is not inexperienced, having worked as a general orthopedic surgeon since 2018, after five years of residency in an orthopedic surgery department. [*Id.*]. Further, he has participated in creating original research in the form of presentations and publications on orthopedic subjects. [*Id.*].

Before forming his opinions, Dr. Hanson reviewed Plaintiff's medical records from both before and after the collision. [Doc. 31-1, pp. 1–2]. He also reviewed imaging studies and the Georgia Motor Vehicle Crash Report for the collision at issue. [*Id.* at p. 1]. He based his conclusions on his review of these records and documents, as well as on his knowledge, experience, and expertise in orthopedics. *See generally* [Doc. 31-1].

In his report, he expresses the following opinions: (a) Plaintiff has a history of bilateral knee pain, (b) Plaintiff sought treatment for knee pain and swelling seven days before the collision at issue, (c) Plaintiff's complaints about knee pain preceded the

collision, (d) Plaintiff made no mention of right knee pain immediately after the collision. [*Id.* at pp. 2–3]. He concludes by summarizing his expert opinion: "[T]he records in this case do not support a traumatic cause for the plaintiff's right knee complaints. The plaintiff's right knee complaints predate the subject accident and were not aggravated by the subject accident." [*Id.* at p. 3].

Plaintiff filed a complaint for damages in Georgia State Court on December 12, 2024, which Defendants later removed to this Court on January 30, 2025. [Doc. 1]; [Doc. 1-1]. Plaintiff filed several documents—including this motion to exclude Dr. Hanson's expert testimony under *Daubert* and Rule 37—on August 31, 2026. [Doc. 24]. Defendants responded in opposition to Plaintiff's motion on October 5, 2026.[1] [Doc. 31].

## LEGAL STANDARD

### A. Exclusion Pursuant to Rule 37

Under Federal Rule of Civil Procedure Rule 26(a)(2), a party who plans to retain an expert witness for purposes of testimony must disclose the witness to the opposing party, accompanied by a written report; a party must make expert witness disclosures at the times and in the sequence ordered by the Court. Fed. R. Civ. P. 26(a)(2). The report must contain a complete statement of all opinions the witness will express and

[1] Defendants moved to extend the time to file a response to Plaintiff's *Daubert* motions—the instant motion and one other—on September 1, 2026, [Doc. 25], which this Court ranted two days later on September 3, 2026. [Doc. 26]. The Court set the deadline for Defendants to respond to Plaintiff's *Daubert* motions on October 5, 2026. [*Id.*].

their basis, the facts or data the witness considered in forming them, any exhibits that will be used to support or summarize them, the witness's qualifications, a list of other cases the witness has testified in during the previous four years, and a statement of his compensation for his study and testimony. *Id.*

If a witness fails to fully disclose an expert witness by the Court's set deadline, as required under Rule 26, then the party is barred from using the witness to supply evidence at trial, unless the failure to disclose was "substantially justified" or "harmless." Fed. R. Civ. P. 37(c)(1); *OFS Fitel, LLC v. Epstein, Becker and Green, P.C.*, 549 F.3d 1344, 1363 (11th Cir. 2008).

A court has discretion to determine whether a violation of the Rule is substantially justified or harmless. *Lamonica v. Hartford Ins. Co. of the Midwest*, 336 F.R.D. 682, 686 (N.D. Fla. 2020). When exercising that discretion, the Court may consider the extent of the surprise to the party the evidence is offered against, the ability of the parties to cure the surprise and its effects, the extent to which allowing the evidence would disrupt the trial, the importance of the evidence, the party's explanation for its untimely disclosure, and whether it appears that the disclosing party was merely negligent or acted intentionally to obtain an unfair advantage. *Lamonica*, 336 F.R.D. at 686; *see also OFS Fitel, LLC*, 549 F.3d at 1363–65 (finding that failure to produce an expert report was not grounds for exclusion under Rule 37, in part because no trial date had yet been set for the case at hand and the complaining party made no claim that the

passage of time affected its ability to employ a rebuttal legal expert or conduct needed analysis).

**B. <u>Exclusion Pursuant to *Daubert*</u>**

The Court performs as a "gatekeeper" by excluding expert testimony not based on sound methodology and closely tied to issues in the case. *Daubert*, 509 U.S. at 589 n.7; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (extending explicitly the principals of *Daubert* to technical and other specialized expert testimony); *Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1194 (11th Cir. 2010); Fed. R. Evid. 702. The Court must "make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152. Even "shaky" evidence may be allowed to pass through the gate, so long as it passes muster under *Daubert*, and the identification of "flaws in generally reliable scientific evidence is precisely the role of cross-examination." *See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341, 1345 (11th Cir. 2003).

> [A]lthough [r]ulings on admissibility under *Daubert* inherently require the trial court to conduct an exacting analysis of the proffered expert's methodology, it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence. Indeed, . . . [a] district court's gatekeeper role under *Daubert* is not intended to supplant the adversary system or the role of the jury. Quite the contrary, [v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.

*Id.* at 1341 (internal citations and quotation marks omitted).

To act as a gatekeeper and establish if relevant expert testimony is admissible or not, the Court determines if: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology used by the expert to reach his conclusions is sufficiently reliable; and (3) the expert's testimony will help the trier of fact understand the evidence or determine a fact in issue, by applying scientific, technical, or specialized expertise. *Bowers v. Norfolk Southern Corp.*, 537 F.Supp.2d 1343, 1349 (M.D. July 26, 2007). The proponent of the expert opinion has the burden of establishing the testimony's qualification, reliability, and helpfulness. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

Here, Plaintiff challenges the reliability of Dr. Hanson's testimony. The United States Supreme Court provided a list of four non-exclusive factors that the Court *may* consider to the extent practicable when evaluating the reliability of an expert's testimony: (1) testability; (2) error rate, (3) peer review and publication; and (4) general acceptance. *Bowers*, 537 F.Supp.2d at 1350 (first citing *Daubert*, 509 U.S. at 593–95; then citing *J & V Dev., Inc. v. Athens-Clarke Cnty.*, 387 F.Supp.2d 1214, 1223 (M.D. Ga. 2005)).

"These four factors apply most comfortably in cases involving scientific testimony, but may offer little help in other cases, particularly those involving non-scientific experts." *Bowers*, 537 F.Supp.2d at 1350–51 (citing *Kumho Tire*, 526 U.S. at 150–52). With that limitation in mind, the advisory committee notes to Federal Rule of Evidence 702 suggest additional factors for consideration under the reliability prong.

These factors are:

(1) Whether the expert is proposing to testify about matters growing naturally and directly out of research he has conducted independent of the litigation, or whether he has developed his opinion expressly for purposes of testifying;
(2) Whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion;
(3) Whether the expert has adequately accounted for obvious alternative explanations;
(4) Whether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting;
(5) Whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give.

*Bowers*, 537 F.Supp.2d at 1351 (citing Fed. R. Evid. 702, *advisory committee's note* (2000 amends.). "'Considerable leeway' is conferred upon the trial court in deciding which tests or factors to use . . ." and no single factor is dispositive; the tests and factors "merely illustrate the issues" available for the Court's consideration. *Id.*

The focus of reliability analysis under *Daubert* "must be solely on the principles and methodology, not on the conclusions they generate." *Daubert*, 509 U.S. at 595. "In most cases, objections to the inadequacies of a study" and an expert's "failure to include variables will [normally] affect the analysis' probativeness, not its admissibility." *Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011) (quoting *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1188 (9th Cir. 2002); *Quiet Tech. DC-8, Inc.*, 326 F.3d at 1345–46 (quoting *Bazemore v. Friday*, 478 U.S. 385, 400 (1986)).

## DISCUSSION

Dr. Hanson's testimony is admissible, both procedurally and substantively. First, it is admissible procedurally under Federal Rule 37. Any failure by Defendants to timely disclose Dr. Hanson as an expert within the discovery period was entirely harmless. Second, it is admissible substantively under *Daubert*. Dr. Hanson is qualified to testify competently regarding the matters he intends to address, his methodology is sufficiently reliable, and his testimony will help the trier of fact understand evidence or determine a fact at issue: the nature of Plaintiff's alleged knee injury and the reasonableness and necessity of certain medical treatment. Plaintiff's substantive problems with Dr. Hanson's testimony go to weight, not admissibility.

### A. Procedural Admissibility Under Rule 37

First, Dr. Hanson's testimony is admissible procedurally under Federal Rule 37. Plaintiff asserts that defense counsel timely disclosed their intention to call Dr. Hanson and produced an expert file containing "over 3,207 pages of documents." [Doc. 24-1, p. 2]. What Plaintiff takes issue with is what Plaintiff calls defense counsel's "inadvertent" omission of a three-page opinion report for Dr. Hanson. [*Id.*].

However, it is unclear how this accidental slip-up actually harmed Plaintiff. Plaintiff only asked about the missing expert report ten months—almost a year—after Defendants initially produced their expert files. [*Id.*]; [Doc. 24-6]. And, when asked where the missing three-page opinion report was, defense counsel provided it the same

day. [*Id.*]. While Plaintiff has not provided the Court with a description of how not having access to it (until the same day Plaintiff first requested access to it) *actually* prejudiced her, *see* [Doc. 24-1, p. 5] (providing only that "Plaintiff is unfairly prejudiced without having timely access," without explaining why or how), Defendants make no effort to claim the failure was substantially justified, themselves also casting the omission as "inadvertent[]." [Doc. 31, p. 9].

The Court does not see how Defendants' accidental failure to include the opinion report resulted in surprise or prejudice to the Plaintiff. Plaintiff has known that Defendants retained Dr. Hanson and intended to introduce his testimony since October 3, 2025. If Plaintiff wished to review his report, but was unable to, any time between October 3, 2025, and August 24, 2026, she has not shown anything to suggest it. And, when Plaintiff finally notified Defendants that the opinion report was not included in their document production, she was provided with it the very same day. Finally, no trial date has been set for this case, and so Dr. Hanson's testimony will not disrupt trial.

Indeed, the parties were able to easily cure any surprise Plaintiff experienced and its effects by addressing the omission the same day Plaintiff noticed it, allowing the evidence would not disrupt trial, and both parties agree that Defendants were merely negligent, rather than acting intentionally to obtain an unfair advantage.

For all these reasons, any failure by Defendants to timely disclose Dr. Hanson as an expert within the discovery period was harmless. Thus, Dr. Hanson's testimony is admissible under Rule 37, despite any Rule 26 violations.

### A. Substantive Admissibility Under *Daubert*

With procedural admissibility addressed, the Court moves on to Plaintiff's substantive arguments. Dr. Hanson's testimony is substantively admissible under *Daubert*. He is sufficiently qualified, his methodology is sufficiently reliable, and his testimony is sufficiently helpful to pass through the proverbial gate.

#### 1. *Dr. Hanson's Qualifications*

Plaintiff's legal argument for excluding Dr. Hanson's testimony does not question his qualifications. [Doc. 24-1, p. 5]. This Court finds Dr. Hanson qualified to give the sort of testimony contained in his expert opinion. He has experience as a general orthopedic surgeon and physician. This role includes assessing the nature and cause of orthopedic injuries, such as injuries to the knee. Indeed, Dr. Hanson has completed original research on knee and ligament injuries in the past. [Doc. 31-2, pp. 1–2]. He is sufficiently qualified to opine on the nature and cause of Plaintiff's knee injury for purposes of his testimony's admissibility.

#### 2. *Dr. Hanson's Methodology*

However, Plaintiff does attack the reliability of Dr. Hanson's opinion testimony, specifically targeting his methodology. Plaintiff claims that Dr. Hanson's opinion

testimony fails on "the reliability prong of [Rule] 702" for "myriad" reasons. [Doc. 24-1, p. 5]. First, Plaintiff attacks the academic rigor of Dr. Hanson's opinions: the lack of testability, the lack of a given error rate, the lack of peer review, the lack of citation to peer-reviewed sources, and the lack of "general acceptance" of his opinion in his field. [*Id.*]. Then, Plaintiff doubles down on this line of attack, arguing that Dr. Hanson has not "submitted any medical literature, studies, or other information which suggests that the methods used in reaching his opinions have been subjected to meaningful collegial scrutiny, are generally accepted in the medical community, or have otherwise been established as reliable." [*Id.*].

These objections to Dr. Hanson's testimony go to weight, not admissibility. Though Plaintiff is certainly welcome to pursue these points on cross examination (to the degree allowed under the Rules), the Court should not exercise its gatekeeping authority to preclude Dr. Hanson's testimony altogether on these grounds.

First, Plaintiff's points are fit more for an expert presenting the results of an academic study or experiment, not an expert relying on professional experience and expertise. Dr. Hanson's testimony is not "scientific" in nature, but rather based on his specialized experience; he is a medical doctor, not an academic. [Doc. 31-2]. "In non-scientific cases such as this one, 'the relevant reliability concerns may focus on an expert's personal knowledge or experience.'" *Ma v. Equifax Info. Servs., LLC*, 288 F. Supp. 3d 1360, 1366 (N.D. Ga. 2017) (citing *Kumho Tire Co.*, 526 U.S. at 150). In other words,

here, it would be improper to rely on standards of scientific reliability like testability and peer review more appropriate for the academic or experimental setting. This includes objections like a lack of peer review, a lack of testability, and a lack of a given error rate for purported findings. *See Am. General Life. Ins. Co. v. Schoenthal Family, LLC*, 555 F.3d 1331, 1338 (11th Cir. 2009) ("Standards of scientific reliability, such as testability and peer review, *do not apply to all forms of expert testimony*." (emphasis added)). Standards of reliability for laboratory testing are generally not very applicable to opinion testimony based on clinical judgment and review of medical records.

Instead, this Court must analyze the actual methodology and principles Dr. Hanson used in coming to his conclusions. Here, Dr. Hanson reviewed Plaintiff's medical records and applied his professional knowledge, experience, and expertise as an orthopedic surgeon. *See generally* [Doc. 31-1]. To that end, he reviewed Plaintiff's medical records—both before and after the collision—imaging studies, and the Georgia Motor Vehicle Crash Report for the subject collision. [*Id.*]. A careful review of medical history is an expected method for an orthopedic surgeon to use when making determinations about the nature and type of injuries. Further, even if Dr. Hanson's expert report was prepared in anticipation of litigation, his review and analysis of the records provided to him appears to be carefully considered.

Indeed, Dr. Hanson does not appear to have unjustifiably extrapolated from an accepted premise to an unfounded conclusion, and does not appear to have been any

less careful than he would be in his regular professional work outside of paid litigation consulting. Finally, Plaintiff makes no argument—and this Court finds no reason to suggest—that professional knowledge and expertise in orthopedic medicine applied to the review of medical records is not generally known to reach reliable results when identifying the nature of an orthopedic injury or necessity of medical treatment. Focused solely on the reliability of Dr. Hanson's apparent principles and methodology, and not on the conclusions his approach generated, this Court finds no reason to doubt his opinion is reliable for the limited purposes of admissibility.

***3. Helpfulness of Dr. Hanson's Testimony***

Finally, Dr. Hanson's testimony will help the trier of fact understand evidence or determine a fact in issue: the source and nature of Plaintiff's knee injuries and the reasonableness or necessity of her medical treatment. Plaintiff also does not contest the helpfulness of Dr. Hanson's testimony, [Doc. 24-1, p. 5], but the Court addresses it here, nonetheless.

In this motor vehicle collision case, any jury will be called to evaluate both new injuries and the potential aggravation of pre-existing conditions. Issues of disputed medical causation are well outside the purview of an average juror but are familiar to Dr. Hanson. He can apply his experience and expertise as an orthopedic surgeon and his general professional medical knowledge to help the jury understand this evidence or make determinations based off it, to a degree the jury would not be able to do

without his assistance. And that is exactly what his testimony sets out to do, even if Plaintiff disagrees with his opinion. Thus, Dr. Hanson's testimony is sufficiently helpful for purposes of admissibility.

## CONCLUSION

Accordingly, the Court **DENIES** Plaintiff's motion to exclude. [Doc. 24]. First, to the degree that Defendants failed to timely disclose Dr. Hanson's expert opinion within the discovery period, such failure was harmless, meaning that his opinion testimony is admissible under Rule 37. Second, Defendants have met their burden under *Daubert*, and the Plaintiff's concerns are more properly handled with cross examination and evidentiary objections at trial, to the degree such objections are proper.

**SO ORDERED**, this 5th day of November, 2026.

S/ *Tilman E. Self, III*
**TILMAN E. SELF, III**
**UNITED STATES DISTRICT JUDGE**

.