**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **SHIRLEY JORDAN,**<br><br>*Plaintiff,*<br><br>**v.**<br><br>**MICHELLE MARIK and HIRSCHBACH MOTOR LINES, INC.,**<br><br>*Defendants.* | **CIVIL ACTION NO. 5:25-cv-00033-TES** |

**ORDER DENYING PLAINTIFF'S *DAUBERT* MOTION TO EXCLUDE DOUGLAS PAHL'S EXPERT TESTIMONY**

This case arises from a February 17, 2023, collision between motor vehicles operated by Plaintiff Shirley Jordan and Defendant Michelle Marik, a truck driver then employed by Defendant Hirschbach Motor Lines, Inc. ("Hirschbach"). Defendants retained Dr. Douglas Pahl, MD to provide his expert opinion concerning the orthopedic injuries Plaintiff allegedly suffered because of this collision. [Doc. 30-1, p. 7]. Plaintiff now moves to exclude his expert testimony and opinion pursuant to *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). [Doc. 20].

## BACKGROUND

Plaintiff alleges that, on February 17, 2023, her vehicle was struck by a tractor-trailer truck operated by Michelle Marik. [Complaint, Doc. 1-1 at ¶ 39]. Marik was driving the truck as an employee of Hirschbach. [*Id.* at ¶ 10]. This collision allegedly

caused Plaintiff to suffer from myriad injuries to her person. [*Id.* at ¶¶ 41, 60–62]. She filed suit to recover general and special damages related to Defendants' alleged negligence, which she claims caused the collision. [*Id.* at ¶¶ 44, 47, 55–58, 62].

Plaintiff contends that, because of the collision, she sustained injuries to her body "including, but not limited to," her neck, left shoulder, left hip, back, cervical spine, and lumbar spine. [*Id.* at ¶ 60]. She further alleges that she suffers from headaches because of the crash. [*Id.*]. She alleges she underwent a variety of medical treatments for these alleged injuries. [*Id.* at ¶ 61]. These treatments included a lumbar fusion surgery performed approximately 8.5 months after the collision. [Doc. 23, Pahl Depo., p. 60:1–4].

On the other hand, Defendants argue that Plaintiff's injuries were not caused by their negligence. Marik's Answer, Doc. 1-1 at ¶ 60]; [Hirschbach's Answer, Doc. 1-1 at ¶ 60]. Defendants retained Dr. Douglas Pahl, MD to "[e]valuate the provided medical records and imaging studies to determine a causality for the motor vehicle collision in which Ms. Jordan was in" and to "testify regarding plaintiff's claimed orthopedic injuries, including but not limited to whether those claimed injuries were caused by the subject accident and reasonableness and necessity of Plaintiff's past and future medical treatment." [Doc. 23, Pahl Depo., pp. 13:5–12, 16:8–15, 17:3–5]; [Doc. 23-2]. According to Defendants' initial disclosures, Dr. Pahl was retained for his opinions "based on his education, training, experience, and his review of plaintiff's available medical records and the discovery, documents, and testimony in this case." [Doc. 23-2].

As part of his review, Dr. Pahl created an expert report concluding that "Ms. Jordan sustained, at most, cervical and lumbar strains and/or an aggravation of her underlying cervical and lumbar degenerative conditions, during the [February collision]," that those conditions resolved in about four months' time, and that "[a]ny treatment occurring after about four months after [the collision] was, more medically likely than not, unrelated to [the collision] and, instead, related to her extensive history of low back pain, sciatica, and degenerative spondylolisthesis . . . ." [Doc. 30-1, p. 8]. To create this report, Dr. Pahl reviewed Plaintiff's "supplied medical documentation" and relied on his "training in orthopaedic surgery . . . and the specific sub-specialization of orthopaedic spine surgery," including "educational, work, and military experience." [*Id.* at pp. 2–8]. He claims to have reached his medical opinions "based on a reasonable degree of medical certainty and based on [his] training . . . ." [*Id.* at p. 8].

Dr. Pahl's professional training and experience is substantial. He is employed as a board-certified orthopedic physician—licensed in Alabama and Georgia—specializing in cervical, thoracic, and lumbar spine disorders. [Doc. 23-4, pp. 1, 3]. He has received professional training in general surgery, orthopedic surgery, and orthopedic spine surgery. [*Id.*]. He also holds, and has previously held, several professional positions related to orthopedic practice and prior military assignments related to orthopedic surgery and care. [*Id.* at pp. 1–2].

Plaintiff filed a complaint for damages in Georgia State Court on December 12, 2024, which Defendants later removed to this Court on January 30, 2025. [Doc. 1]; [Doc. 1-1]. On August 31, 2026, Plaintiff filed several documents, including this *Daubert* motion to exclude Dr. Pahl's expert testimony. [Doc. 20]. On October 5, 2026, Defendants filed their response to Plaintiff's motion.[1] [Doc. 30].

## LEGAL STANDARD

The Court performs as a "gatekeeper" by excluding expert testimony not based on sound methodology and closely tied to issues in the case. *Daubert*, 509 U.S. at 589 n.7; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (extending explicitly the principals of *Daubert* to technical and other specialized expert testimony); *Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1194 (11th Cir. 2010); Fed. R. Evid. 702. The Court must "make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152. Even "shaky" evidence may be allowed to pass through the gate, so long as it passes muster under *Daubert*, and the identification of "flaws in generally reliable scientific evidence is precisely the role of cross-examination." *See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341, 1345 (11th Cir. 2003).

---

[1] Defendants moved to extend the time to file a response to Plaintiff's *Daubert* motions—the instant motion and one other—on September 1, 2026, [Doc. 25], which this Court granted two days later on September 3, 2026. [Doc. 26]. The Court set the deadline for Defendants to respond to Plaintiff's *Daubert* motions on October 5, 2026. [*Id.*].

> [A]lthough [r]ulings on admissibility under *Daubert* inherently require the trial court to conduct an exacting analysis of the proffered expert's methodology, it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence. Indeed, . . . [a] district court's gatekeeper role under *Daubert* is not intended to supplant the adversary system or the role of the jury. Quite the contrary, [v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.

*Id.* at 1341 (internal citations and quotation marks omitted).

To act as a gatekeeper and establish if relevant expert testimony is admissible or not, the Court determines if: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology used by the expert to reach his conclusions is sufficiently reliable; and (3) the expert's testimony will help the trier of fact understand the evidence or determine a fact in issue, by applying scientific, technical, or specialized expertise. *Bowers v. Norfolk Southern Corp.*, 537 F.Supp.2d 1343, 1349 (M.D. July 26, 2007). The proponent of the expert opinion has the burden of establishing the testimony's qualification, reliability, and helpfulness. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

Here, Plaintiff challenges the reliability of Dr. Pahl's testimony. The United States Supreme Court has provided a list of four non-exclusive factors that the Court *may* consider to the extent practicable when evaluating the reliability of an expert's testimony: (1) testability; (2) error rate, (3) peer review and publication; and (4) general

acceptance. *Bowers*, 537 F.Supp.2d at 1350 (first citing *Daubert*, 509 U.S. at 593–95; then citing *J & V Dev., Inc. v. Athens-Clarke Cnty.*, 387 F.Supp.2d 1214, 1223 (M.D. Ga. 2005)).

"These four factors apply most comfortably in cases involving scientific testimony, but may offer little help in other cases, particularly those involving non-scientific experts." *Bowers*, 537 F.Supp.2d at 1350–51 (citing *Kumho Tire*, 526 U.S. at 150–52). With that limitation in mind, the advisory committee notes to Federal Rule of Evidence 702 suggest additional factors for consideration under the reliability prong.

> These factors are:
>
> (1) Whether the expert is proposing to testify about matters growing naturally and directly out of research he has conducted independent of the litigation, or whether he has developed his opinion expressly for purposes of testifying;
> (2) Whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion;
> (3) Whether the expert has adequately accounted for obvious alternative explanations;
> (4) Whether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting;
> (5) Whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give.

*Bowers*, 537 F.Supp.2d at 1351 (citing Fed. R. Evid. 702, *advisory committee's note* (2000 amends.). "'Considerable leeway' is conferred upon the trial court in deciding which tests or factors to use . . ." and no single factor is dispositive; the tests and factors "merely illustrate the issues" available for the Court's consideration. *Id.*

The focus of reliability analysis under *Daubert* "must be solely on the principles and methodology, not on the conclusions they generate." *Daubert*, 509 U.S. at 595. "In

most cases, objections to the inadequacies of a study" and an expert's "failure to include variables will [normally] affect the analysis' probativeness, not its admissibility." *Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011) (quoting *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1188 (9th Cir. 2002); *Quiet Tech. DC-8, Inc.*, 326 F.3d at 1345–46 (quoting *Bazemore v. Friday*, 478 U.S. 385, 400 (1986)).

## **DISCUSSION**

Dr. Pahl's testimony is admissible, because he is qualified to testify competently regarding the matters he intends to address, his methodology is sufficiently reliable, and his testimony will help the trier of fact understand evidence or determine a fact in issue: the source and nature of Plaintiff's injuries and the necessity of her medical treatment. Plaintiff's problems with Dr. Pahl's go to weight, not admissibility.

### **A. Dr. Pahl's Qualifications**

First, Dr. Pahl is qualified to give this testimony. He provides an opinion based on his medical experience and expertise regarding Plaintiff's claimed orthopedic injuries, those injuries' consistency with different potential causes, and the reasonableness and necessity of Plaintiff's medical treatment. [Doc. 23, Pahl Depo., pp. 8:9–12, 13:8–15]. Dr. Pahl is an orthopedic surgeon. [Doc. 23-4, p. 1]. He has been practicing medicine since 1995, and he routinely treats patients involved in motor vehicle accidents, even if motor vehicle collisions are not "the bulk of" his practice. [Doc. 23, Pahl Depo., pp. 8:25—9:1, 10:20—11:11]. Dr. Pahl testified in his deposition

that "maybe 10 to 20 percent" of his practice deals with a combination of motor vehicle collisions, sports injuries, and workers' compensation injuries. [*Id.* at 11:12–25]. Indeed, Plaintiff concedes that Dr. Pahl is qualified as a medical expert in orthopedic surgery and attacks only his qualifications as an expert in "the field of biomechanics" or on the "exact measure of forces needed to cause an injury and the extent to which pain from said injury would last in duration." [Doc. 20-1, p. 5]; [Doc. 23, Pahl Depo., pp. 8:25—9:1, 10:20—11:6].

Eleventh Circuit precedent plainly indicates that an experienced orthopedic surgeon and physician generally has sufficient qualifications to give testimony regarding both an injury's causation and the reasonableness and necessity of medical treatment. *See, e.g.*, *Britt v. Wal-Mart Stores East, LP*, 599 F. Supp. 3d 1259, 1264 (S.D. Fla. 2022) ("[This] board-certified orthopedic surgeon is qualified to testify competently as to his opinions relating to his care and treatment of Plaintiff, the costs associated with that treatment, whether or not Plaintiff has sustained a permanent injury within a reasonable degree of medical probability, damages, causation of Plaintiff's injuries . . . and the need for further treatment, if any, as well as the costs for such treatment." (punctuation omitted)); *Geyer v. NCL (Bahamas) Ltd.*, 203 F. Supp. 3d 1212, 1216–17 (S.D. Fla. 2016) (finding an orthopedic surgeon qualified to testify as an expert based on his extensive experience in the field, where his expert opinion was based on nothing more than a review of medical records and the surgeon had never personally examined

Plaintiff); *Carroll v. Morgan*, 17 F.3d 787, 790 (5th Cir. 1994). This Court agrees; Dr. Pahl's testimony is based on his medical experience, not on any assertions about biomechanics broadly or mere unsupported speculation. *Carroll*, 17 F.3d at 790. Thus, Dr. Pahl's testimony should not be excluded for lack of qualification.

**B. <u>Dr. Pahl's Methodology</u>**

Next, Dr. Pahl's methodology is sufficiently reliable. His testimony is not "scientific" in nature, but rather based on his specialized experience; he is a medical doctor, not an academic. *Kumho Tire Co.*, 526 U.S. at 148; *see generally* [Doc. 30-1]. "In non-scientific cases such as this one, 'the relevant reliability concerns may focus on an expert's personal knowledge or experience.'" *Ma v. Equifax Info. Servs., LLC*, 288 F. Supp. 3d 1360, 1366 (N.D. Ga. 2017) (citing *Kumho Tire Co.*, 526 U.S. at 150). In other words, here, it would be improper to rely on standards of scientific reliability like testability and peer review more appropriate for the academic or experimental setting.

Plaintiff first argues that Dr. Pahl's testimony should be excluded for what appears to be concerns about reproducibility: "testab[ility]," lack of an "error rate," lack of evidence of "peer review" or use of "peer-reviewed source[s]," and a failure to show "the general acceptance of his opinions [in a field of study]." [Doc. 20-1, p. 7]. As the law recognizes by allowing the Court considerable leeway in the factors it considers measuring expert testimony reliability, it would make little practical sense to apply experimental standards like testability, rate of error, or peer review to expert testimony

derived from clinical judgment and analysis of medical records. *See Am. General Life. Ins. Co. v. Schoenthal Family, LLC*, 555 F.3d 1331, 1338 (11th Cir. 2009) ("Standards of scientific reliability, such as testability and peer review, *do not apply to all forms of expert testimony*." (emphasis added)). Standards for laboratory testing and calculable error rates do not apply here, to Dr. Pahl's testimony, which is based on clinical judgment and review of medical records, rather than academic inquiry. *See generally* [Doc. 30-1].

Instead, this Court must analyze the actual methodology and principles Dr. Pahl used in coming to his conclusions. Here, Dr. Pahl reviewed Plaintiff's medical records and applied his professional knowledge, experience, and expertise as an orthopedic surgeon. *See generally* [Doc. 30-1]. To that end, he reviewed Plaintif's medical records—both before and after the collision—including imaging studies. [Doc. 30-1, p. 1]. He also reviewed the Georgia Motor Vehicle Crash Report for the subject collision. [*Id.*]. A careful review of medical records is an expected method for an orthopedic surgeon to use when making determinations about the nature and type of injuries. Further, even if Dr. Pahl's expert report was prepared in anticipation of litigation, his review and analysis of the records provided to him appears to be carefully considered.

Plaintiff makes two arguments to attack this methodology: first, an argument disputing the evidence Dr. Pahl reviewed (or did not review) and resulting disputes about his conclusions, and, second, an argument that Dr. Pahl's opinions are unreliable

because they do not "grow naturally and directly out of research" independent of litigation. [Doc. 20-1, p. 9].

Plaintiff's arguments that Dr. Pahl did not consider certain evidence—that he failed to personally treat Plaintiff, did not independently examine Plaintiff, did not review certain documents, did not review photographs of the vehicles, and did not have access to a pre-collision MRI when making his assessment, [Doc. 20-1, p. 7]—and that his interpretations of the evidence he did review are flawed—for example, regarding Plaintiff's history of lower back pain, [*Id.* at pp. 8–9]—all go to weight, not admissibility; they are credibility arguments. The same goes for his alleged failure to rule out some alternative explanations for certain medical conditions. [*Id.* at p. 8]. A physician witness whose expertise lies in interpreting medical records may testify as to his interpretation of medical records, even if Plaintiff believes his interpretation is flawed or otherwise "defense-tinted." [*Id.*].

Further, Plaintiff's argument that Dr. Pahl's testimony does not grow naturally and directly out of research he conducted independent of litigation, [*Id.* at pp. 9–10], does not provide grounds for exclusion. The law does not require an orthopedic surgeon to conduct independent research on the exact injury presented in a case before he may give admissible testimony on the injury. Similarly, an expert with relevant professional training or experience need not be called to perform a specific type of

analysis in his day to-day daily practice (or to have "taught on [the] subject") to do so in his testimony. *See* [Doc. 20-1, p. 9].

Here, Dr. Pahl testified in his deposition that his professional training included learning and understanding standard healing processes for skin, muscles, tendons, ligaments, and other parts of the body. [Doc. 23, Pahl Depo., pp. 77:16–25—78:1–6]. He stated that his knowledge is based on "well-established" sources including "textbooks like Rockwood and Green." [*Id.*]. While Plaintiff may certainly cross-examine Dr. Pahl on his apparent lack of independent research on recovery timelines or other issues if she so desires, those kinds of alleged deficiencies do not make his testimony inadmissible. Indeed, Plaintiff's methodology arguments all go to weight, not admissibility.

### C. <u>Helpfulness of Dr. Pahl's Testimony</u>

Finally, Dr. Pahl's testimony will help the trier of fact understand evidence or determine a fact in issue: the source and nature of Plaintiff's injuries and the necessity of her medical treatment.

In this motor vehicle collision case, any jury will be called to evaluate both new injuries and the potential aggravation of pre-existing conditions. . Issues of disputed medical causation are well outside the purview of an average juror but are familiar to Dr. Pahl. He can apply his extensive expertise as an orthopedic surgeon and his professional medical knowledge to help the jury understand this evidence or determine the source of Plaintiff's injuries and whether the medical treatment she received—and

claims she will need to receive—is truly medically necessary. And that is exactly what his testimony sets out to do, even if his conclusions are flawed or Plaintiff disagrees. Arguments here against his interpretation of the medical records he was provided and reviewed do not go to the admissibility of his testimony, but, rather, to the weight a jury may or may not afford it. Those sorts of objections are for cross-examination.

## CONCLUSION

Accordingly, the Court **DENIES** Plaintiff's motion to exclude. [Doc. 20]. Defendants have met their burden under *Daubert*, and the Plaintiff's concerns are more properly handled with cross examination and evidentiary objections at trial, to the degree such objections are proper.

**SO ORDERED**, this 5th day of November, 2026.

S/ *Tilman E. Self, III*
**TILMAN E. SELF, III**
**UNITED STATES DISTRICT JUDGE**